### DUFF, Assignee, etc., v. BINDLEY.

*District Court, W. D. Pennsylvania.* February 20, 1883.)

1. TROVER TO RECOVER VALUE OF TIMBER SOLD BY OWNER OF UNDIVIDED IN-
TEREST IN LAND.

It being by statute unlawful for an owner of an undivided interest in timber
land to cut down or remove from the land any timber trees without having first
obtained the consent of his co-tenants, and, as against his non-consenting co-ten-
ants, his sale of lumber manufactured out of timber so cut or removed passing
no title to his vendee, *held*, in an action of trover against such vendee by a
non-consenting part owner, that the plaintiff was entitled to recover the value
of his interest in the lumber as of the date of the defendant's conversion, with
no allowance for the expense and labor of the trespassing vendor.

2. TIMBER FELLED TREATED AS REAL ESTATE.

Timber unlawfully cut down by an owner of an undivided interest in the
land without the consent of his co-tenant, and still lying upon the land at the
time of the marshal's sale of the undivided interest in the land of the non-con-
senting owner, who had not elected to treat the felled timber as personalty, re-
mains part of the freehold, and the interest of the defendant in the execution
therein passes to the marshal's vendee as realty.

At Law.

*L. B. Duff*, for plaintiff.

*Knox & Reed*, for defendant.

ACHESON, J., *(charging jury.)* This is an action of trover, brought
by Levi Bird Duff, assignee in bankruptcy of John Carrier and An-
drew F. Baum, against Edwin Bindley, to recover damages for the
wrongful conversion of certain lumber, boards, etc., made from timber
cut from a tract of land numbered 2009, situated in Clearfield county,
Pennsylvania. This tract, by a deed dated March 13, 1868, was con-
veyed by John Dubois to John Carrier, Andrew F. Baum, and Robert
Osborne, who took and held the land as tenants in common, owning
equal interests—one-third each. About the year 1876, the interest
of Osborne in the land became vested in James W. Riley and J. T.
Stockdale. Carrier and Baum were duly adjudged bankrupts in the
year 1874, and their interests passed to their assignee in bankruptcy.

Prior to the commencement of the proceedings in bankruptcy, how-
ever, Smith and McGregor obtained a judgment in the circuit court of
the United States for the western district of Pennsylvania against
John Carrier, and the assignee in bankruptcy took Carrier's title, sub-
ject to the lien of that judgment. The judgment was duly revived,
and upon an execution issued thereon the United States marshal, on
the nineteenth of June, 1879, sold the interest of Carrier in the land

to the said Riley, to whom the marshal executed a deed therefor dated August 25, and acknowledged August 26, 1879.

Under authority from Riley and Stockdale, but without the consent of the assignee in bankruptcy,—and without his knowledge, so far as appears,—George F. McLean and Andrew F. Baum cut from the said tract of land timber yielding about 2,000,000 feet of lumber. McLean and Baum commenced these operations in the fall of 1878 and continued them during the year 1879, or the greater part thereof. McLean and Baum sawed up the timber, and sold and delivered part of the lumber manufactured out of it to Edwin Bindley, the defendant; and this is the lumber which is the subject-matter of this suit. When sold to the defendant, the lumber was at the railroad siding at Dubois, in Clearfield county, and by defendant's direction it was shipped to him from that point by rail, consigned to him at Pittsburgh. Under the evidence, the railroad siding at Dubois must be considered as the place of delivery to the defendant. Upon the shipment to him at that place the conversion by him of the lumber was complete. In Pennsylvania, by virtue of the provisions of the act of assembly of May 4, 1869, (Purdon, 1467–8,) it is—

"Unlawful for any owner or owners of any undivided interest in timber land within this commonwealth to cut or remove, or to cause to be cut or removed, from the said land, any timber trees, without first obtaining the written consent of all co-tenants in said premises." Section 1.

The second section of the act provides that—

"No sale of any timber cut or removed from such undivided lands before or without such consent, shall pass any title thereto, and the parties injured shall have every remedy in law and equity for the recovery of the said timber trees, and of all square timber, boards, ties, shingles, and other articles whatsoever manufactured therefrom, and also for the recovery of damages for the cutting or removing of the same, which they now have against an entire stranger to the title."

And section 3 provides that—

"Upon the violation of the provisions of the first section of this act, it shall be lawful for any of the parties in interest to sue out a writ of estrepement, to prevent any further cutting thereon, or the removal of any timber then already cut, or both, which said writ shall be of force until the interests of the parties shall be set out in severalty, or the writ dissolved by the court, or the action of partition in reference to said land finally ended."

In the present case, McLean and Baum, in cutting the timber from tract 2009, acted altogether without the consent of the assignee in bankruptcy, and therefore, as to him, they were naked trespassers—

willful wrong-doers. Nor did they acquire, as against the plaintiff, any better title to the lumber, the boards, etc., than they had in the timber itself. The assignee in bankruptcy had the same undivided interest in the lumber as he had in the timber out of which it was sawed. It follows, therefore, that the sale by McLean and Baum to the defendant did not convey any title to the plaintiff's share of the lumber, and the plaintiff is entitled to a verdict according to the extent of his interest in the lumber so sold and consigned to the defendant. From the defendant's testimony it appears that the first delivery to him was of 22,800 feet of clear and common pine boards, on June 21, 1879. The next deliveries were on July 24, August 28, and September 18, 1879. As to the quantities delivered at these dates there is no controversy. The counsel will furnish you with the figures in their respective statements, which they will submit to you. The other deliveries to the defendant were made in cars (the numbers of which we have) at Dubois, on and after November 2, 1879. In respect to the quantities of these deliveries there is a great discrepancy, amounting to from 75,000 to 85,000 feet, between the parties. The evidence here is conflicting. The counsel have commented upon it and given you their respective views. It will be for you to determine, from all the evidence, the whole quantity, the number of feet of lumber, delivered to the defendant, remembering that the delivery took place at Dubois upon its shipment by the cars.

Having determined the whole amount of lumber delivered to the defendant, the next question for your consideration will be, what was the plaintiff's proportion or share therein? He undoubtedly owned a third interest in right of Baum. He claims another one-third interest in right of Carrier. But Carrier's interest in this tract of land was sold by the United States marshal on June 19, 1879. Beyond all question that sale carried to Riley, the purchaser, Carrier's interest in all timber then standing on the tract; but I am of opinion, and charge you, that it went beyond that, and also embraced all felled timber which then remained on the land. I am of the opinion, and instruct you, that such timber—timber cut down by McLean and Baum prior to the date of the marshal's sale, but still lying on said tract No. 2,009, at the time of said sale—must be regarded, as between the the parties to this controversy and those under whom they claim, as part of the realty. *Rogers* v. *Gilinger*, 30 Pa. St. 185; *Leidy* v. *Procter*, 97 Pa. St. 486. Hence, *in right of Carrier*, the plaintiff had only an interest in so much of the lumber in question—the lumber delivered to the defendant—as was sawed or made from timber removed

from tract No. 2,009 prior to June 19, 1879, the date of the marshal's sale.

The jury may fairly assume that the 22,800 feet of boards delivered to the defendant on June 21, 1879, was made from timber which had been removed from the tract prior to the marshal's sale. But how much, if any, of the lumber delivered after June 21st was made from timber removed from the tract prior to June 19, 1879, has not been shown as clearly as is desirable. I, however, leave you to determine, under all the evidence, how the fact is.

In assessing the plaintiff's damages you will ascertain from the evidence what was the fair value of the lumber at the railroad siding at Dubois at and immediately before the time it was put on the cars; and you will make no deduction or allowance for any expenses Mc-Lean and Baum were at in cutting the timber, or sawing it, or in removing it to the railroad siding. I have already instructed you that the plaintiff's interest in the sawed lumber was the same as his interest in the timber itself out of which it was made, and in ascertaining its value no abatement is to be made on account of what McLean and Baum's labor and expenses may have added to its value. They were mere trespassers as against the plaintiff and entitled to no such allowance, and in this respect the plaintiff is in no better position.

Let me briefly recapitulate: The jury will ascertain—*First*, the whole quantity of lumber delivered to the defendant; *second*, the defendant's proportion or share thereof, in accordance with the instructions already given; *third*, the fair value of the lumber at the railroad siding at Dubois at the time it was put on the cars. Having determined these matters, the money value of the plaintiff's share will be of easy calculation. To that value so ascertained you may add (and it will be proper to add) interest to this date.